MEMORANDUM *
Petitioner Francisco Martinez-Farias appeals the Board of Immigration Appeals’ (“BIA”) denial of his motion to reopen and reconsider his case pursuant to 8 C.F.R. § 1003.2. The BIA previously had resolved his case by affirming the decision of the Immigration Judge (“IJ”) denying Petitioner’s application for adjustment of status under 8 U.S.C. § 1255(a).
After learning that Petitioner received Medi-Cal benefits, the IJ terminated the hearing, preventing Petitioner from completing his testimony and preventing Petitioner’s wife, daughter Esmerelda, and son Salvador from testifying at all. In his oral decision, the IJ denied Petitioner’s application for adjustment of status because Es-merelda, his sponsor, had failed to submit an 1-864 Form affidavit of support as required by 8 U.S.C. § 1182(a)(4)(C) and 8 C.F.R. § 213a.2(a)(1)(i)(A), because Petitioner had failed to submit required medical forms, and because Petitioner was a public charge.
Petitioner argued in his motion to reopen and reconsider that the IJ erred by failing to give him an opportunity to present evidence and to rebut the IJ’s findings. We agree.
Had the IJ granted Petitioner a full hearing, Petitioner and his family members might have rebutted the IJ’s conclusion that he lacked a valid affidavit of support. Esmerelda was present in the courtroom and prepared to testify. Given the opportunity, she may have been able to address the missing affidavit to the IJ’s satisfaction or submit a new one on the spot. Salvador, who had already submitted an affidavit as a joint or substitute sponsor, was also present and prepared to testify. In short, had the IJ granted Petitioner a full hearing, Petitioner might have been able to successfully resolve the affidavit issue. Likewise, had the IJ permitted the hearing to continue, Petitioner and his family members may have been able to address the missing medical forms to the IJ’s satisfaction.
In addition to rebutting the supposed procedural defects in Petitioner’s application, a full hearing would have given Petitioner and his family members a chance to rebut the IJ’s substantive finding that Petitioner was a public charge. For example, they could have pointed to 8 U.S.C. § 1182(a)(4)(B), which enumerates five factors that an IJ “shall at a minimum consider” in making a public charge determination. Neither the BIA nor the IJ ever actually analyzed these factors. If they had, they may have reached a different conclusion with respect to Petitioner’s public charge status. Likewise, Petitioner could potentially have pointed to 8 C.F.R. § 245a.3(g)(4)(i), which states that public *731 charge determinations are to be made by looking at the “totality of the alien’s circumstances,” and that the “existence or absence of a particular factor should never be the sole criteria for determining if an alien is likely to become a public charge.” Had the IJ been made aware of this provision, he may have reached a different conclusion. Finally, Petitioner and his family members could have pointed to provisions indicating that Medi-Cal benefits are not to be considered in making public charge determinations. See, e.g., INS’s Field Guidance on Deportability and Inadmissibility on Public Charge Grounds, 64 Fed. Reg. 28689, 28693 (May 26, 1999) (listing Medicaid first under the heading “Benefits That May Not Be Considered for Public Charge Purposes”); http://www.uscis.gov/files/article/public_cfs.pdf (accessed June 11, 2009) (a “Fact Sheet” available to the public on the website of the Department of Homeland Security, U.S. Citizenship and Immigration Services (“USCIS”), indicating that Medicaid benefits are not considered in making public charge determinations); http://www.uscis.gov/files/pressrelease/Public.pdf (accessed June 11, 2009) (a “Quick Guide” to public charge determinations available to the public on the USCIS website that states, “An alien will not be considered a ‘public charge’ for using health care benefits, including programs such as Medicaid”); http://www.uscis.gov/files/pressrelease/public_cqa.pdf (accessed June 11, 2009) (a set of “Questions and Answers” available to the public on the USCIS website stating that “Medicaid and other health insurance and health services ... will not be considered for public charge purposes”).
Even if Petitioner and his family members failed to convince the IJ that Petitioner was not a public charge, they still may have been able to overcome the IJ’s finding by introducing evidence that Petitioner had 40 qualifying quarters of coverage under the Social Security Act. See 8 C.F.R. § 213a.2(e)(2)(i)(B). Again, a full hearing would have allowed them an opportunity to do so.
The dissent argues that the IJ told Petitioner about the required affidavit in 1999, over four years before the merits hearing, and that Petitioner had several opportunities to supply it. It is true that the IJ mentioned the affidavit of support and medical records while giving Petitioner’s lawyer a laundry list of documents that he expected to see. But the IJ subsequently backtracked. At a hearing on September 26, 2000, the IJ told Petitioner’s lawyer to “provide the additional documents in support of the other claims. At minimal the 1-130 application needs to be filed.” ER 119 (emphasis added). This latter statement suggests that so long as the 1-130 application was filed, which it was, Petitioner could proceed with his claims. If, as the dissent argues, we must assume that the IJ’s isolated remark in 1999 provided Petitioner meaningful notice, then we must assume that the IJ’s isolated remark in 2000 did as well.
We note too that, apparently through no fault of Petitioner’s, Petitioner went through several lawyers in this dispute. The lawyer who represented him at the 1999 hearing, Bowman, was replaced by Rojas, who was replaced by Soletes, who was replaced by Ceballos. Ceballos represented Petitioner at the merits hearing. There is no evidence that Bowman knows Ceballos or that he told him about the requirements described by the IJ at the 1999 hearing. It would be unreasonable to expect Petitioner, who does not speak English, and who seems not to be very sophisticated, to retain legal knowledge conveyed in passing by the IJ in 1999 and to put that knowledge to use four years — and three attorneys — later.
*732 We have discretion to reverse a decision of the BIA “on due process grounds if (1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation.” Ibarra-Flores v. Gonzales, 439 F.3d 614, 620-21 (9th Cir.2006) (internal citations and quotation marks omitted). This standard has been met. We hold that the BIA erred in failing to grant Petitioner’s motion to reopen and reconsider his case. We remand to the BIA for further proceedings in light of this opinion.
PETITION GRANTED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.